**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

HUMANTECH, INC.,

    Plaintiff,

v.                                                          Case No. 11-14988

CATERPILLAR, INC., et al.,

    Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS**

In this intellectual property dispute, Plaintiff Humantech Inc.'s amended complaint contains multiple claims against Defendants Caterpillar Inc., Caterpillar Logistics Inc., and Caterpillar Logistics Services LLC for their alleged misuse of Plaintiff's copyrighted materials. Defendants have filed a motion to dismiss each count for failure to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The motion has been fully briefed, and the court determines that a hearing is not necessary. *See* E.D. Mich. LR 7.1(f)(2). Because Plaintiff agrees to dismiss its claim for false designation of origin under the Lanham Act, the court will grant Defendants' motion as to that count. The court concludes that Plaintiff's remaining claims adequately allege an entitlement to relief, and so it will deny Defendants' motion in all other respects.

**I. BACKGROUND**

Plaintiff provides "ergonomics consulting, training, and specialized workplace improvement" services to its customers, specializing in "management systems, workplace engineering and design, ergonomic assessments, and ergonomics training."

(Am. Compl. ¶ 10, Dkt. # 4.)  Plaintiff owns numerous copyrights for manuals and other publications that it shares with clients in the course of its business, including: the Applied Ergonomics Manual (the "AEM"); the Applied Office Ergonomics v3.1 Slide Show; the Ergonomic Design Guidelines for Engineers Manual (the "EGD"); the Design for Assembly Manual; the Ergonomics Hit List; and the Humantech Risk Priority Management Software (collectively, the "Copyrighted Works").  (*Id.* ¶ 11.)

In late 2003, Plaintiff and Defendant Caterpillar Inc. entered into a licensing agreement (the "Limited License") whereby Caterpillar and its subsidiaries were granted a limited license for the internal use of the AEM and EGD.  (*Id.* ¶ 22; Limited License § 2, Def.'s Mot. Dismiss Ex. 1, Dkt. # 13-2.)  Humantech and Caterpillar later executed a Master Agreement for Ergonomic Services (the "MAES"), (Am. Compl. ¶ 23), under which Humantech agreed to provide "professional ergonomic consulting[] and training services to achieve Caterpillar's cost of operations," (MAES § 1, Def.'s Mot. Dismiss Ex. 2, Dkt. # 13-3).[1]  While Caterpillar is known for its manufacture of construction and mining equipment, industrial gas turbines, and diesel-electric locomotives, (Am. Compl. ¶ 12), its subsidiaries Defendants Caterpillar Logistics Inc. and Caterpillar Logistics Services LLC offer clients "additional value-added services" like "comprehensive distribution and order fulfillment solutions to efficiently manage material flows and storage requirements."  (*Id.* ¶ 18.)  Another Caterpillar subsidiary, Caterpillar Safety Services, provides clients "continuous improvement assessments and program

---

[1] Because both the Limited License and the MAES are referred to in the amended complaint and are central to Humantech's claim, the court may consider them as part of the pleadings when evaluating Defendants' motion to dismiss.  *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

2

development in topics such as site safety, environmental matters and ergonomics," with the latter services including "identification of high-risk areas, risk mitigation and tactical recommendations." (*Id.* ¶ 19.)

Defendants had access to the copyrighted works through their contractual relationship with Plaintiff, and Plaintiff alleges that Defendants developed "numerous training modules" that "incorporate large amounts of content" from the Copyrighted Works, "including text, illustrations, graphics, course design, and format." (*Id.* ¶¶ 26-27.) Specifically, Plaintiff avers that "large portions of the Copyrighted Works" appear in Defendants' Ergonomics Across the Enterprise, Ergonomics and WMSDs, Ergonomics Hit List™, NIOSH Lifting Equation, The BEST™, The BRIEF™, Psychophysical Analysis: Push, Pull, and Carry, and Office Ergonomics v.4 and v.5 (collectively, the "Infringing Works"). (*Id.* ¶ 26.)

According to Plaintiff, Defendants have been utilizing the Infringing Works in ways exceeding the scope of their license, by displaying them "in connection with ergonomics services that [they have] marketed to third parties" including their "supplier [sic], vendors, distributors, and customers." (*Id.* ¶ 28.) The Infringing Works are also available to "Caterpillar customers and internal clients over the internet." (*Id.* ¶ 31.) Moreover, Plaintiff claims Defendants have "deliberately removed the Humantech copyright notice" from the images taken from the Copyrighted Works and incorporated into the Infringing Works, replacing it with the notation: "Developer: Caterpillar University, Caterpillar: Confidential Green." (*Id.*)

Defendants have also, Plaintiff avers, provided images from the Copyrighted Works to the third-party consulting company PureWorks Inc., d/b/a Pure Safety. (*Id.*

¶¶ 33, 35.)  Although Defendants gave these materials to Pure Safety "ostensibly for the sole purpose of developing online versions" of Plaintiff's training materials for Defendants' internal use, (*id.* ¶ 35), Plaintiff subsequently discovered that elements of the Copyrighted Works were reproduced without attribution in the "Office Ergonomics v.4" and "Office Ergonomics v.5" training programs that Pure Safety commercially marketed to its customers. (*Id.* ¶¶ 36-37, 43.)

When Plaintiff confronted Pure Safety about their use of the Copyrighted Works, Pure Safety explained that they had received the Humantech images pursuant to an agreement with the Caterpillar subsidiary Caterpillar University, which had claimed to have full rights to the images and directed that they be included in the Office Ergonomics program. (*Id.* ¶ 38.)  Pure Safety further indicated that, though it had shown Caterpillar University a draft of the program that included Humantech copyright notices, Caterpillar University expressly requested that the notices be removed. (*Id.* ¶¶ 39-42.)  At the time of Pure Safety's communication with Plaintiff, Pure Safety confirmed that "the Office Ergonomics v.4 and v.5 programs had been licensed commercially to at least 132 corporate, educational, and governmental customers," not including its additional "OnDemand customers," "OnDemand resellers," and "System Access customers." (*Id.* ¶ 44.)

Based upon these alleged events, Plaintiff initiated this action against Defendants on November 11, 2011.  The amended complaint alleges six claims against Defendants: copyright infringement (Count I), contributory copyright infringement (Count II), false designation of origin/reverse palming off (Count III), violation of the Digital Millennium

Copyright Act (the "DMCA") (Count IV), trademark infringement (Count V), and breach of contract (Count VI).

## II.  STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), otherwise it is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) for "fail[ing] to state a claim upon which relief can be granted," *id.* 12(b)(6).  To survive a Rule 12(b)(6) motion, a complaint must allege enough facts that, when assumed true, "raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), by "stat[ing] a claim to relief that is plausible on its face," *id.* at 570.  A claim is facially plausible when the plaintiff pleads facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than showing only "a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).  While a complaint need not state "detailed factual allegations,"  *Twombly*, 550 U.S. at 555, it must contain more than "labels and conclusions," *id.*, "a formulaic recitation of the elements of a cause of action," *id.*, or "naked assertion[s]" unsupported by "further factual enhancement," *id.* at 557.  In other words, although "a court must accept as true all of the allegations contained in a complaint," this tenet is "inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.

A court takes a "two-pronged approach" when considering a Rule 12(b)(6) motion. *Id.* at 679. First, the court must dismiss "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Second, if a complaint does present "well-pleaded factual allegations," a court will "assume their veracity" and decide "whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III.  DISCUSSION

Defendants assert that Plaintiff has failed to plead sufficient facts in support of the six substantive counts contained in the amended complaint, relying primarily on the contention that Plaintiff conveyed its ownership interest in the Copyrighted Works to Caterpillar under the Limited License and the MAES. The court disagrees, finding that Plaintiff's factual averments pass muster under the governing pleading standards. Nevertheless, the court will, at Plaintiff's request, dismiss without prejudice the claim for false designation of origin included as Count III of the amended complaint. (*See* Pl.'s Mem. Opp'n Defs.' Mot. Dismiss 2 n.1, 20 n.9, Dkt. # 18.)

#### A.  Contractual Assignment of Ownership in the Copyrighted Works

According to Defendants, they cannot be held liable for copyright infringement, violating the DMCA, trademark infringement, or breach of contract because Caterpillar owns the Copyrighted Works under the clear terms of the Limited License and the

MAES.[2]  The provision in the Limited License that forms the basis of this argument states:

> Licensor [Plaintiff] acknowledges and agrees that Works created through the performance of services for Caterpillar and paid for by Caterpillar constitute works made for hire under federal copyright laws.  Licensor hereby assigns to Caterpillar all ownership and copyrights in and to such Works, and warrants waiver of all moral rights in and to such Works.

(Limited License § 4(c).)  As used in the Limited License, "Works" means: "(a) any works of authorship created through performance of the Services referred to in the Consulting Agreement, including without limitation software and related documentation; and (b) any Confidential Information created by Humantech as a result of the Services provided hereunder."  (*Id.* § 1.)

The MAES similarly provides:

> Originals of all drawings and data sheets, if any, prepared by or on behalf of Consultant [Plaintiff] in the performance of the Ergonomic Services shall be

---

[2]In addition to arguing that the relevant language in the Limited License and the MAES prevents Plaintiff from making out their claims, Defendant contends that it deprives Plaintiff of standing to bring this action.  Defendants' invocation of the term "standing" aside, it is clear that their contention goes solely to the merits of Plaintiff's claims, not the court's jurisdiction to decide them.  *See HyperQuest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 381 (7th Cir. 2011) (holding that question of plaintiff's ownership of an exclusive copyright bears upon whether she can state a claim upon which relief can be granted under the Copyright Act).  *See generally Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011) ("Where a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted, not for lack of subject-matter jurisdiction.").  It is of no import to the Rule 12(b)(6) inquiry whether Defendants' argument should be considered an attack on Plaintiff's ability to state a claim or, as Plaintiff urges, an affirmative defense involving an alleged assignment of Plaintiff's ownership rights in the Copyrighted Works.  "Whether a particular ground for opposing a claim may be the basis for dismissal for failure to state a claim depends on whether the allegations in the complaint suffice to establish that ground, not on the nature of the ground in the abstract."  *Jones v. Bock*, 549 U.S. 199, 215 (2007).

7

> the property of Caterpillar . . . . Consultant hereby grants to Caterpillar the entire right and title to each copyright that is applicable to any works of authorship developed for or in connection with the Ergonomic Services and fixed in any tangible medium of expression (including, without limitation, said drawings and data sheets). . . . Caterpillar is not liable for reuse of drawings and data beyond their original intended purpose.

(MAES § 16(E).)

Defendants argue that the Copyrighted Works are "Works created through the performance of services for Caterpillar and paid for by Caterpillar," (Limited License § 4(c)), and/or "works of authorship developed for or in connection with the Ergonomic Services" provided to Caterpillar, (MAES § 16(E)). As a result, Defendants maintain, they possess "all ownership and copyrights in and to" the Copyrighted Works, (Limited License § 4(c)), including "the entire right and title to each copyright that is applicable" thereto. (MAES § 16(E).) If this were the case, Defendants are at liberty to incorporate the Copyrighted Works into the Infringing Works and disseminate the Infringing Works in the manner alleged in the amended complaint.

The court agrees with Defendants that, if the Copyrighted Works are within the purview of the quoted provisions of the Limited License and the MAES, Plaintiff cannot prevail on its claims. However, Plaintiff has successfully pled that the Copyrighted Works preexisted its contractual relationship with Caterpillar and so could not be considered works "created" or "developed" for Caterpillar. Under the Limited License, which Plaintiff alleges is incorporated by reference into the MAES, (Am. Compl. ¶ 23), Plaintiff "reserves all right, title and interest in and to any of the Prior Works that Licensor uses as part of its day-to-day operations and during the performance of services for various clients." (Limited License § 4(a).) Here, "Prior Works" refers to

"Humantech's prior knowledge, including background software, ideas, concepts, methodologies, and processes developed or acquired without Caterpillar's assistance before the effective date of this agreement," (Limited License § 1). All but one of the Copyrighted Works are alleged to have been created and registered with the Copyright Office before Plaintiff and Caterpillar entered into the Limited License in 2003, so it is probable that they are "Prior Works."

Moreover, with respect to the AEM and EGD, the Limited License expressly grants only a non-exclusive, limited license for "use . . . by the business units and subsidiaries that comprise Caterpillar solely for Caterpillar's internal purposes." (*Id.* § 2; *see also id.* ("Any rights not clearly and expressly granted to Licensee under this License are reserved to Humantech.").) This provision, which is at the heart of the entire agreement, would make little sense if, in a later clause, Plaintiff "assign[ed] to Caterpillar all ownership and copyrights in and to" the AEM and EGD. (*Id.* § 4(c).) *See Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) ("A court will not interpret a contract in a manner that would nullify or render provisions meaningless, or in a way that is contrary to the plain and obvious meaning of the language used." (citing *Fidelity Nat'l Title Ins. Co. of N.Y. v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1063 (Ill. 2007))).[3] It is not apparent on the face of the amended complaint and the parties' contracts that Plaintiff cannot state a claim because Defendants owned the Copyrighted Works.

---

[3]Both the Limited License and the MAES have choice-of-law clauses stating that Illinois law governs the interpretation of the contracts. (Limited License § 11; MAES § 16(I).)

### B. Copyright Infringement

To establish copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In cases "where there is no direct evidence of copying, a plaintiff may establish 'an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue.'" *Kohus v. Mariol*, 328 F.3d 848, 853-54 (6th Cir. 2003) (quoting *Ellis v. Diffie*, 177 F.3d 503, 506 (6th Cir. 1999)). Defendants posit two fatal defects in Plaintiff's allegations of copyright infringement: (1) Plaintiff did not identify which portions of the Copyrighted Works are original and therefore eligible for copyright protection; and (2) Plaintiff did not provide enough detail as to how the Infringing Works are alleged to be substantially similar to the Copyrighted Works. The court is unpersuaded.

The amended complaint alleges that Plaintiff "owns numerous copyrights for manuals, surveys, guidelines, images, and other works in the filed of ergonomic risk assessment and workplace improvement, representing over 33 years of research and development." (Am. Compl. ¶ 11.) It goes on to list six specific registered copyrighted works, complete with registration numbers. (*Id.*) This satisfies Plaintiff's burden of pleading that it owns a copyrighted work.

As for allegations going towards Defendants' unauthorized copying of its copyrighted work, the amended complaint identifies eight specific training modules produced by Defendants that "incorporat[e] large portions of the Copyrighted Works." (*Id.* ¶ 26.) More specifically, the amended complaint alleges that "large amounts of

content from Humantech's Copyrighted Works, including text, illustrations, graphics, course design, and format" are reproduced in the Infringing Works, (*id.* ¶ 27), which were then used "in various presentations in connection with ergonomics services that [Caterpillar] has marketed to third parties," (*id.* ¶ 28). In the court's view, these are "well-pleaded factual allegations" that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Plaintiff claims that portions of the Copyrighted Works were reproduced wholesale in Defendants' Infringing Works and disseminated to third parties. Requiring Plaintiff to include in the amended complaint a comprehensive list of exactly which textual passages, illustrations, or graphics were taken from which Copyrighted Works and included in which Infringing Works, as Defendants argue is necessary, would be tantamount to requiring "detailed factual allegations" that need not be adduced in order to survive a Rule 12(b)(6) motion. *Twombly*, 550 U.S. at 555.

The decisions in *National Business Development Services, Inc. v. American Credit Education & Consulting, Inc.*, 299 F. App'x 509 (6th Cir. 2008), and *Dorchen/Martin Associates, Inc. v. The Brook of Cheboygan, Inc.*, 838 F. Supp. 2d 607 (E.D. Mich. 2012), do not dictate a different conclusion. The complaints dismissed in those cases for failure to state a copyright-infringement claim were lacking crucial facts that are included in the Plaintiff's amended complaint. In *National Business*, the complaint alleged only that: "'At some time in the past, at a time not presently known[,] the individual Defendants . . . began to advertise, promote or offer for sale to the general public, educational materials, brochures, and other derivative works, which incorporate the copyrighted materials of the Plaintiff in the Registered Copyrighted Works.'" 299 F. App'x at 511. As the district court pointed out, and the court of appeals

11

agreed, the complaint neither identified a work produced by the defendant that infringes upon the plaintiff's copyrighted work, nor provided a description of the manner in which the defendant's works infringe on the plaintiff's work. *Id.* at 512. Here, the amended complaint does both: it lists specific works by Defendant that incorporate "text, illustrations, graphics," and other elements of specific copyrighted works belonging to Plaintiff. (Am. Compl. ¶¶ 26-27.)

The infringement allegations considered in *Dorchen/Martin* also came up short. There, the plaintiff claimed that a building constructed by the defendants infringed upon the plaintiff's copyrighted architectural design. The complaint, however, averred only that the defendants' building was substantially similar to the plaintiff's design in terms of "overall form as well as the arrangement and composition of spaces and elements in the design . . . not includ[ing] individual standard features." 838 F. Supp. 2d at 611. The court found this insufficient, as the plaintiff had not described the way in which the defendants' building infringed upon its design in a manner that would provide the defendants "adequate[] . . . notice of the claim against them," especially in light of the defendants' challenge to the originality of that design. *Id.* at 612.

In contrast, Plaintiff's amended complaint does contain enough detail to put Defendants on notice of their claim, notwithstanding Defendants' vague challenges to Plaintiff's failure to specifically allege originality and substantial similarity. The text, illustrations, and graphics purportedly copied from the Copyrighted Works fall within the Copyright Act's definition of "original works of authorship." *See* 17 U.S.C. § 102(a)(1), (5) (extending protection to "literary works" and "pictorial, graphic, and sculptural works"). Plaintiff avers that, not only are Defendants' Infringing Works substantially

similar to the Copyrighted Works, but portions of the Infringing Works are in fact *identical* to the Copyrighted Works. Plaintiff has provided a sufficient statement of its copyright-infringement claim, and dismissal of this count of the amended complaint is not warranted.

### B. Contributory Copyright Infringement

"Contributory infringement occurs when one, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *NCR Corp. v. Korala Assocs, Ltd.*, 512 F.3d 807, 816 (6th Cir. 2008) (emphasis omitted) (citing *Bridgeport Music, Inc. v. WB Music Corp.*, 508 F.3d 394, 398 (6th Cir. 2007)). To state a claim for contributory copyright infringement, a plaintiff must allege: "'(1) direct copyright infringement [by] a third-party; (2) knowledge by the defendant that the third-party was directly infringing; and (3) [defendant's] material contribution to the infringement.'" *Id.* (alterations in original) (quoting *Parker v. Google, Inc.*, 242 F. App'x 833, 837 (3d Cir. 2007)). Defendants maintain that Plaintiff's allegation of contributory infringement fails for the same reasons as its claim of direct infringement. Again, Defendants miss the mark.

The amended complaint contains a fairly detailed description of the activities that Plaintiff labels as contributory infringement. First, Plaintiff avers that Pure Safety committed direct copyright infringement by incorporating images from the Copyrighted Works into its Office Ergonomics v.4 and Office Ergonomics v.5 presentations, both of which it commercially offered for sale. (Am. Compl. ¶¶ 36-37, 43.) Second, Plaintiff claims not only that Defendants knew about this infringement, but that it was done at their direction: a memorandum received from Pure Safety indicated to Plaintiff that it

13

had received Humantech's copyrighted materials from Caterpillar, that Caterpillar had directed they be used in the Office Ergonomics presentations, and that Caterpillar had explicitly requested that it remove Humantech's copyright notices from the images it used. (Am. Compl. ¶¶ 38-42.) If these allegations are true, Defendants materially contributed to direct copyright infringement perpetrated by Pure Safety. *See NCR Corp.*, 512 F.3d at 816 ("'Secondary liability may be imposed on a defendant who does nothing more than encourage or induce another to engage in copyright infringement' . . . ." (quoting *Warner Bros. Entm't, Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 268 (S.D.N.Y. 2007))). Plaintiff's contributory-infringement claim survives Defendants' Rule 12(b)(6) challenge.

### C. DMCA Violation

The DMCA prohibits a person from, "knowingly and with the intent to induce, enable, facilitate, or conceal infringement," providing, distributing, or importing for distribution "copyright management information that is false." 17 U.S.C. § 1202(a). It also forbids the intentional removal or alteration of any copyright management information, as well as the distribution or importation for distribution of copyright management information that has been removed or altered, when the act is done "without the authority of the copyright owner or the law" and when one knows "that it will induce, enable, facilitate, or conceal . . . infringement." *Id.* § 1202(b). "Copyright management information" includes "[t]he name of, and other identifying information about, the copyright owner of the work, including the information set forth in a notice of copyright." *Id.* § 1202(c)(3).

In the amended complaint, Plaintiff alleges that Defendants have "deliberately tried to misrepresent the source of the Copyrighted Works and misattribute their ownership" by removing the Humantech copyright notice that appears on images in the Copyrighted Works before reproducing those images in the Infringing Works. (Am. Compl. ¶ 31.) Plaintiff further claims that Defendants have placed a notice identifying Caterpillar University as the developer of some of the Infringing Works. (*Id.*) Defendants then, according to Plaintiff, made those images available to its customers and clients over the internet. (*Id.* ¶ 32.) Defendants make no specific arguments beyond those already discussed as to why these allegations fail to state a claim under the DCMA, and the court sees no reason why Plaintiff's claim is not facially plausible.

### D. Trademark Infringement

Plaintiff's trademark-infringement claim is based upon Defendants' production and marketing of "a training module entitled 'CPS Ergonomics Hit List,'" (*id.* ¶¶ 103-04), which is alleged to infringe upon Plaintiff's "common law trademark" over the term "Ergonomics Hit List," (*id.* ¶ 100). Because Plaintiff has not obtained federal registration of its purported trademark, its claim proceeds under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). When evaluating such a claim, "courts must determine whether the mark is protectable, and if so, whether there is a likelihood of confusion as a result of the would-be infringer's use of the mark." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 761 (6th Cir. 2005). Defendants argue that the amended complaint does not adequately allege either element.

As to the validity of Plaintiff's purported "Ergonomics Hit List" mark, Defendants assert that it is not sufficiently distinctive to deserve protection under the Lanham Act.

While "[s]uggestive, arbitrary, and fanciful marks are inherently distinctive and are protectable so long as the putative owner has actually used the mark[,] . . . descriptive marks . . . can become protectable [only] by developing a secondary meaning," and "[g]eneric marks . . . receive no protection." *Id.* at 761-62 (citations and footnotes omitted). In Defendants' view, "Ergonomics Hit List" is a generic or descriptive term, and Plaintiff's failure to aver that the mark has secondary meaning dooms its trademark claim.

The distinctiveness of a mark is a question of fact and, "[e]ven in the age of *Iqbal*, the court should not ordinarily decide [it] on a motion to dismiss," *Field of Screams, LLC v. Olney Boys & Girls Cmty. Sports Ass'n*, Civil Action No. DKC 10-0327, 2011 WL 890501, at *6 (D. Md. Mar. 14, 2011) (collecting cases). "[O]n a motion to dismiss, a plaintiff does not have to specifically allege its common law trademark has attained secondary meaning, because it can be inferred from evidence relating to proof of intentional copying or public exposure achieved by the designation." *BottleHood, Inc. v. Bottle Mill*, --- F. Supp. 2d ----, No. 11-cv-2910-MMA(MDD), 2012 WL 1416272, at *5 (S.D. Cal. Apr. 23, 2012); *see also Solid Host, NL v. Namecheap, Inc.*, 652 F. Supp. 2d 1092, 1107 (C.D. Cal. 2009). In the amended complaint, Plaintiff alleged that: it has used the term "Ergonomics Hit List" since as early as 1991; it "has given notice to the public of its use of its mark via consistent use of the TM symbol in conjunction with the mark"; it has used the mark "in conjunction with ergonomics training materials published by Humantech" and "in the provision of its ergonomics training and consulting services"; and the mark "has become exclusively identified with Humantech" due to "continued and extensive use and advertising." (Am. Compl. ¶¶ 100-01, 106.) Although these

16

summary allegations provide minimal detail concerning the mark's secondary meaning, they are sufficient to put Defendant on notice that the term "Ergonomics Hit List" is associated with Plaintiff's services in the eyes of the public. *See Solid Host*, 652 F. Supp. 2d at 1108 ("Solid Host's allegation that it has consistently used the 'Solid Host' mark in commerce with American customers since 2004, construed liberally in its favor, suggests that the phrase 'Solid Host' has become associated in customers' minds with the company's services."). *But see Walsh Bishop Assocs., Inc. v. O'Brien*, Civil No. 11-2673 DSD/AJB, 2012 WL 669069, at *6 (D. Minn. Feb. 28, 2012) (finding "conclusory statements" that plaintiff's marks "have come to be understood by customers and the public" because of its "long, continuous, and exclusive use of its trade names" insufficient to state claim based on secondary meaning). Plaintiff may ultimately be unable to prove that its mark deserves Lanham Act protection, but it need not make any more specific allegations of secondary meaning at the pleading stage.

Defendants also contend that Plaintiff has not adequately pled that their use of the mark is likely to cause confusion. Like the question of a mark's distinctiveness, "likelihood of confusion is generally a question of fact" and "dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most extreme trademark infringement cases, such as where goods are unrelated as a matter of law." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (internal quotation marks omitted). A court typically considers eight factors when deciding whether a likelihood of confusion exists: "(1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant

in selecting the mark; and (8) likelihood of expansion of the product lines." *Id.* at 610. While Plaintiff does not explicitly reference these likelihood-of-confusion factors in the amended complaint, it avers that: it has been exclusively using the mark "Ergonomics Hit List" since 1991 and that mark has come to be identified with its product, (Am. Compl. ¶¶ 100-01, 105-06); both Plaintiff and Defendants have used the term "Ergonomics Hit List" in conjunction with the provision of ergonomics training and consulting services, (*id.* ¶¶ 101, 103-04, 107-08); and Defendants are competitors with Plaintiff in the business of ergonomics assessment, consulting, and training, (*id.* ¶¶ 19-21). These allegations go to the strength of Plaintiff's mark, the relatedness of the goods or services offered by Plaintiff and Defendants, and the similarity of the marks. This is enough to meet Plaintiff's burden of pleading a plausible entitlement to relief on the trademark-infringement claim.

### E. Breach of Contract

Defendants' final attack on Plaintiff's amended complaint is that it does not specifically allege each element of Plaintiff's breach-of-contract claim. To plead a claim for breach of contract under Illinois law, "a party must allege that: (1) a contract exists; (2) the plaintiff performed its obligations under the contract; (3) the defendant breached the contract; and (4) the plaintiff sustained damages as a result of the breach." *Patrick Eng'g, Inc. v. City of Naperville*, 955 N.E.2d 1273, 1282 (Ill. App. Ct. 2011) (citing *Int'l Supply Co. v. Campbell*, 907 N.E.2d 478, 487 (Ill. App. Ct. 2009)), *appeal allowed*, 962 N.E.2d 483 (Ill. 2011).

Contrary to Defendant's assertion, enough facts are presented in the amended complaint to suggest that Plaintiff can establish a breach of the Limited License and/or

the MAES.  Plaintiff claims that those agreements are "valid, enforceable, and . . . binding upon the parties," (Am. Compl. ¶ 116; *see also id.* ¶¶ 22-24), and, pursuant to those contracts, it provided Defendant the Copyrighted Works with the "clear intent" that Caterpillar would use them "solely for internal job assessment, job improvement, and training purposes," (*id.* ¶¶ 22, 25).  Plaintiff further avers that Defendants have been using the Copyrighted Works in ways that "violate[] the scope of [their] license," (*id.* ¶ 29), by including them "in various presentations in connection with ergonomics services that it has marketed to third parties," (*id.* ¶ 28).  Finally, Plaintiff alleges that, as a result of Defendants' breach of their license, the Copyrighted Works have been disseminated to a large number of individuals and entities, including 132 customers of the rival ergonomic services provider Pure Safety, to Plaintiff's detriment.  (*Id.* ¶¶ 44, 118.)  This is enough to carry the breach-of-contract count past Defendant's motion to dismiss.

## IV. CONCLUSION

Accordingly, IT IS ORDERED that Defendants' motion to dismiss [Dkt. # 12] is GRANTED IN PART AND DENIED IN PART.  It is GRANTED in that Count III of the amended complaint is, with Plaintiff's consent, DISMISSED WITHOUT PREJUDICE.  It is DENIED in all other respects.

    s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  September 7, 2012

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 7, 2012, by electronic and/or ordinary mail.

                                              s/Lisa G. Wagner
                                              Case Manager and Deputy Clerk
                                              (313) 234-5522