**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HUMANTECH, INC.,

    Plaintiff,

v.                                          Case No. 11-14988

CATERPILLAR, INC., et al.,

    Defendants.

_____/

**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS**
**DEFENDANT'S COUNTER-CLAIM**

Humantech, Inc., sues Caterpillar, Inc., and Caterpillar subsidiaries for wrongs arising from Caterpillar's alleged misuse of agreements licensing Humantech's intellectual property. Alleging that Humantech abused discretion conferred by one of the agreements, Caterpillar counter-claims for breach of the duty of good faith and for tortious interference. This order addresses Humantech's motion to dismiss both counts of the counter-claim. The matter is fully briefed, and no hearing is needed. *See* E.D. Mich. LR 7.1(f)(2). Because the pertinent clause of the agreement conferred an absolute discretion not subject to abuse, the motion will be granted.

**I. BACKGROUND**

In a November, 2003, "limited license" and in an April, 2004, "master agreement," Humantech, an ergonomics consultant, licensed ergonomics manuals and other copyrighted material to Caterpillar and its subsidiaries. The master agreement, which incorporates the limited license, states:

> 1.  *Purpose of the Agreement.*  During the term of this Agreement, [Humantech] will provide professional ergonomic consulting and training services to achieve Caterpillar safety metrics and to reduce Caterpillar's cost of operations. . . .

(Dkt. # 29, Ex. 2 at 1.)  Section 16(E) of the master agreement grants each party the discretion to forbid an assignment of rights:

> E.  *Assignment of Rights and Obligations.*  Neither party may assign any of its rights or obligations under this Agreement without first obtaining the other party's express written consent.

(Dkt. # 29, Ex. 2 at 8 (the second "Section 16(E)").)  Two other clauses in Section 16 grant discretion to Caterpillar; unlike Section 16(E), however, the two clauses prohibit an unreasonable use of the discretion provided.  (*Id.* at 7 (Section 16(D): "Each Attachment shall . . . remain in effect until [Humantech] completes all Ergonomics Services to Caterpillar's reasonable satisfaction[.]"); *id.* at 9 (Section 16(J): "[Humantech] shall demonstrate to Caterpillar's reasonable satisfaction that [Humantech] possesses sufficient financial resources to perform all of its obligations and duties[.]").)

According to the counter-claim, in 2011 Caterpillar began to negotiate the sale of a subsidiary that used the licensed material.  To complete the sale Caterpillar needed to assign the rights in the limited license and the master agreement.  Caterpillar asked Humantech to consent to an assignment of rights to an anonymous company (Caterpillar called the company "Buyer/Newco").  The counter-claim asserts that, "in bad faith, Humantech refused—and continues to refuse—to provide written consent," and that Humantech "intentionally . . . interfered with Caterpillar's ability to finalize an agreement with Buyer/Newco."  (Countercl. 39, 41, Dkt. # 24.)  Caterpillar alleges that

Humantech's blocking an assignment breached the implied duty of good faith and fair dealing and tortiously interfered with a business opportunity.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs a motion to dismiss a counter-claim. *Static Control Components, Inc. v. Lexmark Int'l, Inc.*, 697 F.3d 387, 401 (6th Cir. 2012). "To survive a motion to dismiss" under Rule 12(b)(6), a counter-claim "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).

The parties agree that Illinois law governs their contracts. Under Illinois law, a contract that displays a definite meaning "is interpreted by the trial court as a matter of law without the use of parol evidence." *Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999); *Chi. Park Dist. v. Ill. Labor Relations Bd.*, 820 N.E.2d 61, 70 (Ill. App. Ct. 2004); *Benedict* v. *Fed. Kemper Life Assur. Co.*, 759 N.E.2d 23, 26 (Ill. App. Ct. 2001); *cf. Royal Ins. Co. of Am. v. Orient Overseas Container Line, Ltd.*, 525 F.3d 409, 421 (6th Cir. 2008) (stating the same principles under Michigan law). The parties agree also that Illinois law governs the claim for tortious interference. (Pl.'s Mot. to Dismiss 14-15, Dkt. # 29; Def.'s Resp. 10, Dkt. # 32 at 12.)

## III. DISCUSSION

### A. The Duty of Good Faith

When interpreting a contract, the common law judge of the distant past fixed an austere eye on words, and words alone. The duty to perform in good faith arose in the late nineteenth century as part of a larger movement to loosen interpretation. *See* H.

3

Dubroff, *The Implied Covenant of Good Faith in Contract Interpretation and Gap-Filling: Reviling a Revered Relic*, 80 St. John's L. Rev. 559, 564-71 (2006); M. Van Alstine, *Of Textualism, Party Autonomy, and Good Faith*, 40 Wm. & Mary L. Rev. 1223, 1231-46 (1999); A. Farnsworth, *Disputes Over Omissions in Contracts*, 68 Colum. L. Rev. 860, 862-68 (1968). Since then, judges debating the proper scope of the duty of good faith have invoked the terms of the more general debate about the importance a contract's text. And those terms have changed little. Proponents of a broad duty of good faith continue to cite Cardozo, who wrote:

> The law has outgrown its primitive stage of formalism when the precise word was the sovereign talisman, and every slip was fatal. It takes a broader view today. A promise may be lacking, and yet the whole writing may be instinct with an obligation, imperfectly expressed.

*Wood v. Lucy, Lady Duff-Gordon*, 118 N.E. 214 (N.Y. 1917) (quotation omitted). The more ardent defenders of text repeat Learned Hand: "In commercial transactions it does not in the end promote justice to seek strained interpretations in aid of those who do not protect themselves." *James Baird Co. v. Gimbel Bros., Inc.*, 64 F.2d 344, 346 (2d Cir. 1933); *see also Eustis Mining Co. v. Beer, Sondheimer & Co.*, 239 F. 976, 984-85 (S.D.N.Y. 1917) (L. Hand, J.). One side tries to help contracted parties fulfill the aim of their contract. The other side tries to help contracting parties create a predictable contract. One side insists on adjusting a contract to account for an unforeseen event; the other attempts to reduce unforeseen events by not adjusting contracts. The judiciary has pursued conflicting ends, and the result is predictable. After a century of dispute, "the precise interaction of the duty of good faith with express contract language . . . remains an important jurisprudential mystery." Van Alstine, *supra* 40 Wm. & Mary L.

Rev. at 1227; Dubroff, *supra* 80 St. John's L. Rev. at 561 ("The [recent] attention lavished on the implied covenant has not . . . resulted in the emergence of a clear consensus on what it is."); *see also Ginsberg v. Northwest*, 653 F.3d 1033, 1043 (9th Cir. 2011) (Rymer, J., concurring) ("This is a difficult question . . . . [The duty of good faith] is a covenant between the parties, suggesting a self-imposed undertaking, but is implied into the contract by the state, indicating a state-imposed obligation."), *vacated on other grounds*, 695 F.3d 873 (9th Cir. 2012).

Humantech and Caterpillar signed a contract that grants each of them the discretion to decide whether to consent to an assignment of rights. Now that Humantech has objected to a proposed assignment, each party raises the flag for an opposing side in an old and unsettled dispute. Humantech views the master agreement as granting it an essentially absolute right to withhold consent, while Caterpillar asserts that the duty of good faith requires Humantech to have a good reason to withhold consent.

Caterpillar argues that contracting parties implicitly expect that a clause conferring discretion will be used reasonably. *See, e.g.*, *Castle v. McKnight*, 866 P.2d 323, 326-27 (N.M. 1993); *Kendall v. Ernest Pestana, Inc.*, 709 P.2d 837, 846 (Cal. 1985); *see also Larese v. Creamland Dairies, Inc.*, 767 F.2d 716, 718 (10th Cir. 1985). Construing discretion as absolute would, in this view, unduly enrich one party and unfairly surprise and harm the other. Humantech argues that a discretion clause, if not unconscionable, constitutes a negotiated and enforceable right to unqualified discretion. *See, e.g.*, *Taylor Equip., Inc. v. John Deere Co.*, 98 F.3d 1028,1032-33 (8th Cir. 1996); *Enfield Equip. Co. Inc. v. John Deere Co.*, 64 F.Supp.2d 483, 486 (D. Md. 1999);

*Shoney's LLC v. MAC East, LLC*, 27 So.3d 1216 (Ala. 2009). According to this view, requiring a party to act "reasonably" re-writes the contract, alters the parties' agreement, and promotes expensive litigation. Offering a third option, incidentally, then-Judge Scalia suggested using a contract's structure to determine how much discretion a contract confers. *Tymshare, Inc. v. Covell*, 727 F.2d 1145, 1154 (D.C. Cir. 1984).

Underlying each competing view are assumptions about the behavior of negotiating parties and about the costs and benefits of adjudicating allegations of bad faith. Judges reason from conflicting premises, and the conflicting premises stand on little more than conflicting intuitions—"here as elsewhere evidence-based law remains a dream." *Doe ex rel. Doe v. Elmbrook School Dist.*, 687 F.3d 840, 873 (7th Cir. 2012) (Posner, J., dissenting).[1]

When discussing how Illinois's duty of good faith applies to a clause bestowing discretion, the state and federal case law promotes the range of available positions. On the one hand, *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351 (7th Cir. 1990) (Easterbrook, J.), calls for the strictest textualism:

> Firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of "good faith." . . . . Knowledge that literal enforcement means some

---

[1] Justice Holmes explained the problem in 1897:

You can give any conclusion a logical form. You can always imply a condition in a contract. But why do you imply it? It is because of some belief as to the practice of the community or of a class, or because of some opinion or policy, or, in short, because of some attitude of yours upon a matter not capable of exact quantitative measurement, and therefore not capable of founding exact logical conclusions.

*The Path of the Law*, 10 Harv. L. Rev. 457, 366 (1897).

6

> mismatch between the parties' expectation and the outcome does not imply a general duty of "kindness" in performance, or of judicial oversight into whether a party had "good cause" to act as it did. . . . Any attempt to add an overlay of "just cause" . . . to the exercise of contractual privileges would reduce commercial certainty and breed costly litigation.

908 F.2d at 1357; *see also L.A.P.D., Inc. v. Gen. Elec. Corp.*, 132 F.3d 402, 404 (7th Cir. 1997). Further, *Original Great American Chocolate Chip Cookie Co., Inc. v. River Valley Cookies, Ltd.*, 970 F.2d 273 (7th Cir. 1992), states that "there is no blanket duty of good faith" and that "reasonableness [is not] the test of good faith." What the duty of good faith prohibits, according to *River Valley*, is unforeseeable, opportunistic, dishonest behavior; conduct that "change[s] the bargain struck by the parties in favor of the opportunist[.]" 970 F.2d at 280-81.

Meanwhile, however, several cases say that "contractual discretion must be exercised reasonably and not arbitrarily or capriciously." *Cap. Options Investments, Inc. v. Goldberg Bros. Commodities, Inc.*, 958 F.2d 186, 189 (7th Cir. 1992); *see, e.g.*, *Interim Health Care of N. Ill. v. Interim Health Care, Inc.*, 225 F.3d 876, 884-885 (7th Cir. 2000) (discussing *Dayan v. McDonald's Corp.*, 466 N.E.2d 958 (Ill. App. Ct. 1984)). And a few cases appear to affirm "reasonableness" and textualism—Justice Cardozo and Judge Hand—simultaneously:

> The covenant of good faith requires that a party vested with contractual discretion exercise that discretion reasonably [and] not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectation of the parties. Parties to a contract, however, are entitled to enforce the terms of the contract to the letter and an implied covenant of good faith cannot overrule or modify the express terms of a contract.

*Northern Trust Co. v. VIII South Michigan Associates*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995) (citations omitted); *see also Seip v. Rogers Raw Materials Fund, L.P.*, 948

7

N.E.2d 628, 637 (Ill. App. Ct. 2011) (proclaiming a duty to exercise contractual discretion reasonably but then stating, "The duty [of good faith], however, is not an independent source of duties").

Sound policy, strong logic, and firm precedent are absent. Two approaches, each supported by an array of courts—and noteworthy champions—are present. The view Justice Scalia articulated for the D.C. Circuit seems to the court a sensible middle ground. *Tymshare, Inc. v. Covell*, 727 F.2d 1145 (D.C. Cir. 1984), involved an employee who earned a bonus for each sale he completed above a quota. The employee's contract granted the employer "sole discretion" to adjust the quota, and the issue was whether the employer violated the duty of good faith when it raised the quota in order to erase a bonus the employee had earned. The employer argued that its power to adjust the quota negated the duty to act in good faith. The *Tymshare* court reasoned as follows:

> ["]It is possible to so draw a contract as to leave decisions absolutely to the uncontrolled discretion of one of the parties and in such a case the issue of good faith is irrelevant." [c-o]. But the trick is to tell *when* a contract has been so drawn—and surely the mere recitation of an express power is not always the test. Sometimes it may suffice, depending upon the nature of the expressed power. . . . But to say that every expressly conferred contractual power is of this nature is virtually to read the doctrine of good faith . . . out of existence.

*Tymshare*, 727 F.3d at 1153-54 (emphasis in original) (citation omitted). In other words, embracing text while sparing no thought for context can lead an interpreter astray. *See generally Campbell v. Allied Van Lines Inc.*, 410 F.3d 618, 623-25 (9th Cir. 2005) (O'Scannlain, J., dissenting).

8

While avoiding a constrained textualism, the *Tymshare* court also offered an example that implicitly opposed the notion that the duty of good faith must attach to each grant of discretion. A demand note, the court observed, allows a lender to choose when to require repayment; and yet, "in the nature of human arrangements," it said, no sense of "good faith" limits when a demand for repayment may occur. 727 F.3d at 1153. Again, context must contribute to interpretation.

The court concluded:

> Where what is at issue is the retroactive reduction or elimination of a central compensatory element of the contract—a large part of the *quid pro quo* that induced one party's assent—it is simply not likely that the parties had in mind a power quite as absolute as [the employer] suggests. . . . It seems to us that the "sole discretion" intended was the discretion to determine the existence or nonexistence of the various factors that would reasonably justify alteration of the sales quota. . . . The language [cannot reasonably] be read to confer discretion to reduce the quota for any reason whatever—including what [the employee] has alleged here, a simple desire to deprive an employee of the fairly agreed benefit of his labors.

727 F.3d at 1154. Inferences that arose from investigating the contract's structure provided a dispositive insight about the contract's meaning.

So, the court, through Judge Scalia, declined to enforce a contract "to the letter," or, for that matter, "to the word" or "to the sentence." It rejected the breed of textual literalism that *Kham & Nate's Shoes No. 2* appears to promote. At the same time, the grant of discretion to the employer in *Tymshare* created no legal presumption that the employer had to act in good faith. The employer had to act in good faith because the court's concluding otherwise would produce a senseless contract that no reasonable employee would sign. The focus remained on the contract at hand.

9

*MJ & Partners Restaurant L.P. v. Zadikoff*, 995 F.Supp. 929 (N.D. Ill. 1998), uses something like Scalia's approach to apply Illinois law. The defendant operated a restaurant celebrating Michael Jordan. A contract licensing Jordan's "name, likeness, voice, and persona" to the defendant preserved for Jordan "the right to review and approve each additional restaurant opportunity" presented to Jordan by the defendant. When Jordan refused to allow a new restaurant, there arose a dispute like the present one. Jordan asserted an "absolute right" to forbid a new restaurant, while the defendant asserted that Jordan had to act in accord with reason. 995 F.Supp at 931-32.

The district court acknowledged the cases holding that a party "must exercise [contractual] discretion reasonably" and not "arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." 995 F.Supp. at 932 (quoting *Dayan*, 466 N.E.2d at 972). However, the court ruled for Jordan:

> An implied reasonableness restriction must be viewed in light of what the parties explicitly bargained for. It is only where a party acts in a manner that could not have been contemplated at the time of contracting that courts will step in and impose a good faith requirement. [*Kham & Nate's Shoes No. 2*].
>
> The possibility that [Jordan] might unreasonably decide not to approve the opening of additional restaurants was one that clearly could have been contemplated at the time of drafting. In fact, as [Jordan] points out, the parties explicitly limited [Jordan's] discretion in every other instance where [Jordan's] approval was necessary as a condition precedent to [the defendant's] actions. We think that this demonstrates that the parties carefully considered [Jordan's] exercise of discretion throughout the agreements, and, where they thought it necessary, explicitly limited [Jordan's] discretion by inserting language which stated that approval could not be "unreasonably withheld." Based on this pattern, [the defendant] cannot now say that the parties failed to resolve the issue of [Jordan's] discretion because it was outside the scope of their contemplation and that this court must incorporate an implied term of good faith to "fill the gap." *Kham & Nate's Shoes No. 2*, 908 F.2d at 1357. [Jordan] does not attempt to take advantage of latent ambiguities or unresolved issues and therefore cannot be said to be in violation of [his] duty of good faith.

995 F.Supp. at 933. Basically, the district court applied the duty of good faith but collapsed the duty to one element: acting within "the reasonable expectations of the parties." A review of the contract's structure convinced the district court that Jordan's acting "unreasonably" was within the parties' expectations and that Jordan therefore enjoyed absolute discretion. The district court stated what the parties "thought"; what ought to matter instead—especially if the court stays within the contract's four corners—is the contract and the reasonable inferences that arise from it. *See Air Safety, Inc.*, 706 N.E.2d at 884; *Int'l Minerals & Chemical Corp. v. Liberty Mut. Ins. Co.*, 522 N.E.2d 758, 764 (Ill. App. Ct. 1988); *see also Heath v. A.B. Dick Co.*, 253 F.2d 30, 33-34 (7th Cir. 1958); *Eustis Mining Co.*, 239 F. at 984; 11 R. Lord, *Williston on Contracts* § 31:4 (4th ed.). Otherwise, however, the district court applied the type of structural analysis used in *Tymshare*.

The analysis in *Tymshare* and in *MJ & Partners* fits the present action nicely. In *Tymshare* the employer could use the discretion at issue to annul "a large part of the *quid pro quo* that induced [the employee's] assent." The court limited the discretion conferred by the clause accordingly. Conversely, Humantech and Caterpillar's master agreement contains a clause entitled "Purpose of the Agreement," which states that Humantech will provide service to, will reduce costs for, and will increase safety at Caterpillar. The master agreement's self-proclaimed central goal was to establish and govern dealings between Humantech and Caterpillar. The possibility of an assignment of rights was peripheral. In all likelihood, a proposed assignment would upset the agreement, surprise the other party, and be rejected.

11

*MJ & Partners* concludes that a contractual clause explicitly limiting discretion reveals an awareness of the ability to limit discretion. It follows that, if a party agrees to limit discretion in one clause, the party fails to limit discretion in other clauses at its peril. This rule might not track the behavior of negotiators accurately, but it should. Whether the default is to be a strict adherence to text, a "reasonableness" requirement, or some *tertium quid*, one thing at least is certain: "if parties wish more certainty, they must use more certain words." *Eustis Mining Co.*, 239 F. at 986. In this instance, the absence of a qualifier requiring "reasonableness" means the assignment clause cannot disrupt the parties' main purpose, which was to operate together, and not with strangers.

Under the only reasonable interpretation of the master agreement, neither party much needed an assignment right, neither party expected the other party to attempt an assignment, and, thus, each party preserved its right to prevent any proposed assignment. The duty of good faith counter-claim fails.

### B. Tortious Interference

Humantech identifies several defects in the claim for tortious interference. First, the counter-claim states as a bare conclusion Humantech's "intentional" and "improper" interference with a potential agreement between Caterpillar and "Buyer/Newco." Without facts supporting the allegation that Humantech intended to disrupt a deal, the counter-claim fails to allege a plausible claim for relief. *Cf. DeHart v. DeHart*, ___ N.E.2d ____, 2012 WL 736910, *6 (Ill. App. Ct. Mar. 6, 2012) ("To recover for tortious interference with an economic expectancy, a plaintiff must allege facts that support . . . the defendant's intentional interference [with an expectancy].").

Second, the counter-claim never alleges that Humantech interacted with "Buyer/Newco." A plaintiff must allege acts that the defendant directed at a third party. *Douglas Theater Corp. v. Chi. Title & Trust Co.*, 641 N.E.2d 584, 590 (Ill. App. Ct. 1994). Caterpillar argues that Humantech's conduct toward Caterpillar was "directed" at "Buyer/Newco" because the conduct affected "Buyer/Newco." (Def.'s Resp. 12.) Under the rule, however, "directed" means "*directed,*" not "indirectly directed." A defendant must interact with the third party. *See LaSalle Bank Nat'l Assoc. v. Moran Foods, Inc.*, 477 F.Supp.2d 932, 939-40 (N.D. Ill. 2007); *Dawson v. W. & H. Voortman, Ltd.*, 853 F.Supp. 1038, 1044 (N.D. Ill. 1994).

Third, Humantech possessed the right to block an assignment, and Caterpillar, reciprocally, lacked the right to assign. To the extent Caterpillar used the promise of an assignment as a negotiating chip with "Buyer/Newco," Caterpillar negotiated offering an asset it did not own. One cannot promise to deliver someone else's property and then cry tort when the owner refuses to sell. Said another way, no reasonable expectation of entering a business agreement arose from a negotiation sustained by Caterpillar's empty promise. *See Williams v. Weaver*, 495 N.E.2d 1147, 1152 (Ill. App. Ct. 1986); *see also Dawson*, 853 F.Supp. at 1044.

The tortious inference counter-claim fails.

## IV. CONCLUSION

IT IS ORDERED that Humantech's motion to dismiss [Dkt. # 29] is GRANTED.

Caterpillar's counter-claim [Dkt. # 24] is DISMISSED WITH PREJUDICE.


          s/Robert H. Cleland
          ROBERT H. CLELAND
          UNITED STATES DISTRICT JUDGE

Dated: December 13, 2012


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, December 13, 2012, by electronic and/or ordinary mail.

          s/Lisa Wagner
          Case Manager and Deputy Clerk
          (313) 234-5522